**United States District Court**
**Northern District of Alabama**
**Southern Division**

01 MAY 31 AM 10: 08

| | | |
|---|---|---|
| **Lori A. Scott,** | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-00-N-0849-S |
| | ] | |
| **The City of Homewood, Alabama;** | ] | |
| **Homewood Police Department;** | ] | |
| **Charles Trucks; J. Paul Costa;** | ] | |
| **George Carr,** | ] | **ENTERED** |
| | ] | |
| Defendant(s). | ] | MAY 3 1 2001 |

**Memorandum of Opinion**

## I.   Introduction

In this employment discrimination action, plaintiff Lori A. Scott ("Officer Scott"), alleges that the City of Homewood ("City"), the Homewood Police Department,[1] Chief Charles Trucks ("Chief Trucks"), Captain J. Paul Costa ("Captain Costa") and Lieutenant George Carr ("Lieutenant Carr"), in their individual capacities as officers and/or supervisors of the Police Department, by denying her request for a job transfer on the basis of her gender, violated her rights under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. This matter is presently before the court on defendants' motion for summary judgment, filed on February 27, 2001 (Doc. # 28). The matter has been fully briefed and ripe for decision. After careful consideration of the

---

[1] Plaintiff's claims against the "Homewood Police Department" will be dismissed because she is an employee of the City of Homewood and the Police Department is not a separate legal entity capable of suing or of being sued. (Def. Ex. A, Affidavit of Chief Trucks).



arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion for summary judgment is due to be **GRANTED** in all respects.

## II. Statement of Facts[2]

The facts, as garnered from the affidavits and deposition testimony submitted by the parties and viewed in a light most favorable to the non-moving plaintiff, are as follows:

On May 3, 1999, the City of Homewood posted a job announcement for a position of School Resource Officer ("SRO") position, for assignment to the Homewood Middle School. (Def. Ex. A at ex. 3). The SRO program, according to the job announcement, was designed to:

> [P]rovide support for students, teachers and staff in areas that relate to law and law enforcement. This support includes providing classroom instruction, group or individual counseling, protecting personnel and property on school campuses, gathering information concerning criminal activity involving students on school property, investigating crimes which occur on school grounds and enforcing laws and ordinances of the City of Homewood and the State of Alabama.

(*Id.*). While the pay, benefits and privileges of a SRO are, in large part, identical to those of a patrol officer, SRO's enjoy "fixed" hours (7:30 a.m. to 3:30 p.m) with Saturdays and Sundays as off days, and the use of a marked take-home automobile. (Def. Ex. A, Trucks Aff. at ¶ 8, ex. 3). In order to qualify for the SRO position, applicants were required to have a minimum of three (3) years experience with the Patrol Division of the Homewood Police Department and either a Bachelor of Science or a Bachelor of Arts degree from an

---

[2] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

2

accredited four (4) year college. (Def. Ex. A at ex. 3). In addition to these mandatory requirements, the announcement also provided that, in selecting a SRO, the decision-maker would consider the applicants'

    (1) Communication skills, both oral and written;
    (2) Ability to serve as a role model to the students;
    (3) Physically fit, height and weight in proportion;
    (4) Self motivated;
    (5) Project the image of what a police officer is in appearance as well as knowledge.

(*Id.*).

  Officer Scott accepted employment as a police officer with the City of Homewood on January 17, 1995. (Def. Ex. A, at ex. 1 and 2). In May of 1999, along with four other officers, she submitted a written request to be considered for the newly created SRO position. (Def. Ex. A at exhibits 4 and 5; Ex. B, Trucks Depo.; Ex. C, Scott Depo.). Officer Scott holds bachelor's degrees in both physical education and criminal justice, has extensive experience as a child day care worker and camp counselor and, because Homewood Middle School is on her "beat," is acquainted with many of the students that the SRO would be required to instruct and/or counsel. (Plf. Ex. 1, Scott Depo. pp. 7-8; Plf. Ex. 7 pp. 1-2).

  Because one applicant was informed that his lack of a college degree rendered him ineligible for the position, and a second applicant resigned from the police department prior to the time the position was filled, the pool of potential candidates narrowed to a choice between Officer Scott and Officer Jonathan L. Prell ("Officer Prell"). (Def. Ex. B, Trucks Depo. at p. 29). Officer Prell holds a bachelor's degree in criminal justice and

worked with cadets in the Civil Air Patrol for five years following his graduation from high school. (Def. Ex. A at ex. 7). He joined the department in January of 1995, the same month as Officer Scott. (Plf. Ex. 8). After reviewing employment records and consulting with certain supervisory officers, Chief Trucks made the final decision to award Officer Prell the SRO position. (Def. Ex. B, Trucks Depo. at p. 38).

Officer Scott filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 9, 1999, alleging that she was not awarded the transfer to SRO because of her gender.[3] On or about September 2, 1999, the EEOC sent Officer Scott her Notice of Right to Sue. She commenced this action on April 3, 2000.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

---

[3] The plaintiff also alleges that the defendants discriminated against her in the areas of job assignments and training; she concedes, in her responsive submission, that she has never taken the exams that would qualify her for a promotion, withdrew her name from consideration for a position in the narcotics division, and declined the opportunity for a D.A.R.E. position. (Def. Statement of Facts at ¶¶ 30-33). Moreover, she has failed to respond to defendants' arguments in support of summary judgment as to these claims. In the absence of any aid from the plaintiff, the court assumes she isn't serious about pursuing these claims and will henceforth disregard them. It was and remains a mystery to the court why lawyers insist on tossing frivolous claims in with potentially meritorious ones, diverting their and the court's attention from the serious aspects of a case and wasting their and the court's time and energy.

4

if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A. Title VII

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It expressly prohibits refusing to hire or discharging an employee based on a prohibited factor. *Id*. Similarly, Title VII also expressly provides that "[i]t shall be an unlawful employment practice for an employer . . . otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Id*.

If Officer Scott is to prevail on her claim that the City violated Title VII by denying her request for a transfer to the position of SRO because of her gender, she must submit proof of the City's discriminatory motive, that is, some causal connection between the alleged adverse employment action and her sex. *See Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998). In a Title VII case, such as this, where the plaintiff relies solely upon circumstantial evidence, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 & n. 6, 101 S. Ct. 1089, 1094 & n. 6, 67 L. Ed. 2d 207 & n. 6 (1981). "Demonstrating a *prima facie* case is not onerous, it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999).

Once the plaintiff establishes a *prima facie* case, the burden of production then shifts to the employer to articulate a "legitimate nondiscriminatory reason" for the alleged discriminatory employment action. *Lathem*, 172 F.3d at 793. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1527-28 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1997). As the Eleventh Circuit has made clear:

> Title VII addresses discrimination. Title VII is not a shield against harsh treatment at the workplace. Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for good reason, bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.

*Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984).

If the employer presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination "drops from the case," *Burdine*, 450 U.S. at 255 n. 10, leaving the elements of the *prima facie* case. *Combs*, 106 F.3d at 1528. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the employer was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. The plaintiff may meet this burden by persuading the fact-finder either directly that a discriminatory reason more than likely motivated the employer or indirectly that the employer's proffered explanation is unworthy of belief. *Combs*, 106 F.3d at 1528. If the plaintiff succeeds in meeting this burden, the disbelief of

8

the defendant's proffered reasons, together with the *prima facie* case, is sufficient circumstantial evidence to support a factual finding of discrimination and preclude summary judgment. *Id.* at 1529.

1. **The *Prima Facie* Case**

In order to make out a *prima facie* Title VII case of discrimination in the present context, the plaintiff must prove that: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) the job was filled by someone outside the protected class. *Hinson v. Clinton County Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000). Apparently conceding that Officer Scott has satisfied three of the foregoing requirements, the City takes the position that she cannot establish a *prima facie* case of gender discrimination because no reasonable person, in her position, would view the denial of a transfer from patrol officer to school resource officer as an adverse employment action. *See Doe v. DeKalb County Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998). In response, Officer Scott argues that, while the pay is identical to that of an ordinary patrol officer, the SRO position carries additional prestige, preferable work hours, and a marked take-home car.

2. **Legitimate Non-Discriminatory Reason**

Assuming, without deciding, that Officer Scott suffered an "adverse employment action," and, therefore, has made out a *prima facie* case of intentional discrimination,[4] the burden shifts to the City to articulate one or more "legitimate, non-discriminatory reasons

---

[4] The court views this point as a serious one and assumes a *prima facie* case only because it is satisfied that the defendants have carried their burden to articulate a legitimate nondiscriminatory reason for their decision and that the plaintiff has not adequately rebutted that reason.

9

for its employment action." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). This burden is "exceedingly light," *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138 (11th Cir. 1983), and the defendant "need only offer admissible evidence sufficient to raise a genuine issue of material fact as to whether it had a legitimate reason." *Hill v. Seaboard C.L. R. Co.*, 767 F.2d 771 (11th Cir. 1985).

According to the City, while both candidates were equally qualified for the SRO position, Officer Scott was not selected because of her "abnormal" use of sick time and vacation time. Chief Trucks, the final decision-maker, reached this decision after meeting with Lieutenant Gordon, Lieutenant Carr and Deputy Chief Costa, and reviewing the applicants' employment records.[5] (Def. Ex. B, Trucks Depo. at p. 38). Those records indicate that, although the two officers were hired just days apart, as of August 31, 1999, Officer Prell had 360 sick hours and 344 vacation hours available for use while Officer Scott had only 53 sick hours and 40 vacation hours available. (Def. Ex. A at ex. 11). According to the City, the abnormality of Officer Scott's use of sick/vacation time is evidenced not only by disproportionate use, but also by the fact that Officer Scott regularly engaged in the practice of taking sick leave following a weekend or off day. (Def. Statement of Facts at ¶ 24; Plf. Response at ¶ 24)). Indeed, on one occasion, Officer Scott was counseled about her use of sick time and the importance of having adequate sick leave available in reserve should she need it. (Def. Ex. A at ex. 10, Letter of July 28, 1998).

---

[5] The employment records contain, and the decision-maker considered, the applicants': (a) tenure; (b) education; (c) letters of commendation and recommendation; (d) disciplinary record; (e) use of vacation, sick and holiday time; and (e) working overtime. (Def. Ex. B, Trucks Depo. at p. 38).

10

The significance of good attendance for a SRO, and the corresponding decision to award the SRO position to Officer Prell, is described by Chief Trucks, the final decision-maker, as follows:

> Both individuals [Scott and Prell] had a nice background as far as civilian education was concerned, both persons had expressed a desire to be there, but when you got to looking at the availability of the individuals and looking at the tenure that each had, then it came down to a point of whether we were going to have somebody there on a full-time basis or someone who would not be there because of being sick and not able to devote the amount of time that we felt like was necessary for that position
>
> . . .
>
> The deciding factor – The very deciding factor when you have two equal candidates that certainly have the capability to perform the job that you want; and they certainly did, when you get down to [it] you have people that have the same qualifications and background, you've got to look at the final analysis of who's going to be available for more of the time to be placed in a very sensitive position, who people expect to be there on a daily basis, who depend upon that individual. That's what the final analysis was.

(Def. Ex. B, Trucks Depo., pp. 30, 42). Clearly, if believed, the City's explanation would be a legitimate, nondiscriminatory reason for awarding the SRO position to Prell, the male applicant, rather than to Officer Scott. *See Gilchrist v. Bolger*, 733 F.2d 1551, 1553 (11th Cir. 1984) ("Whether the policy of treating a high number of absences, although earned and approved, as an attendance problem is a good employment policy or a bad one or even a policy prohibited under other laws, Title VII does not prohibit employment decisions based on that policy provided the policy is applied equally to all employees").

11

3.  **Plaintiff's Proof of Pretext**

Because the City has successfully rebutted Officer Scott's *prima facie* case, the burden shifts back to Officer Scott to demonstrate, by a preponderance of the evidence, that the City's reason for declining to award her the SRO position is a mere pretext for unlawful gender discrimination. *See McDonnell Douglas*, 411 U.S. at 804. In an effort to carry her burden, Officer Scott argues: (1) she is "substantially more qualified" than Officer Prell; (2) the City has articulated inconsistent reasons for not awarding her the position; and (3) the final decision-maker, Chief Trucks, has made statements evidencing a bias against female police officers. As described below, the court is not convinced that the circumstantial evidence proffered by Officer Scott, taken as a whole, is at all sufficient to undermine the City's non-discriminatory explanation.

a.  **Qualifications**

Officer Scott takes the position that the City's explanation for its employment action is not worthy of belief because she was "substantially more qualified" than Officer Prell to fill the open SRO position. In support of this contention, she points out that, while Officer Prell "simply has a degree in criminal justice," she holds a bachelor's degree in both criminal justice *and* education. (Plf. Response at p. 12). Moreover, in addition to her double major, Officer Scott cites her experience with children as a day care worker, camp counselor and church parish hall manager. The City argues, and the court agrees, that Officer Scott's argument is without merit.

As previously noted, both officers joined the police department at roughly the same time, both officers have experience working with children, and both officers hold college

degrees. While one of a SRO's many duties apparently includes instructing and/or counseling children, the evidence before the court suggests, and the parties do not dispute, that a SRO is a uniformed police officer, not a certified school teacher. (Def. Ex. A at ex. 3). Even assuming *arguendo* that someone with a degree in physical education would have an advantage in communicating with school children, any advantage would certainly be compromised if he or she failed to attend work on a daily basis.

### b. Inconsistent Explanations

In addition to touting her qualifications, Officer Scott argues that, while the City currently maintains she was not awarded the transfer because of her "abnormal" use of available sick/vacation time, in its "official response" to the EEOC, the City took position that Officer Prell was awarded the position "because he would work better with the students and personnel of the Homewood School System." (Plf. Ex. 11). These inconsistencies, according to Officer Scott, demonstrate that the City's reasons are not the true reasons why she was denied the SRO transfer. *See Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir. 1994) (recognizing inconsistencies in employer's proffered explanation can be evidence of pretext).

In *Betchel Construction Co. v. Secretary of Labor*, 50 F.3d 926, 935 (11th Cir. 1995), the Eleventh Circuit addressed the situation in which an employer is alleged to have offered "inconsistent explanations" for its actions. The employer in *Betchel* stated, in a proceeding before an administrative law judge, that the plaintiff's employment was terminated because of his "attitude" only to later take the position, on appeal, that the plaintiff's layoff was due to his poor job performance. *Betchel*, 50 F.3d at 935. The employer's "shifting

explanations," the court reasoned, demonstrated pretext. *Id*. This case, however, is not *Betchel*.

The City has consistently maintained that Officer Scott's use of sick/vacation time was the "deciding factor" in awarding the SRO position to Officer Prell. Attendance was the "deciding factor," according to Chief Trucks, because it "came down to a point of whether we were going to have somebody there on a full-time basis or someone who would not be there because of being sick and not being able to devote the time we felt like was necessary for that position." (Def. Ex. B, Trucks Depo., p. 30). In light of this explanation, and given that Officer Prell had an excellent attendance record, there is nothing inherently inconsistent about the City's subsequent statement that Officer Prell was offered the position "because he would work better with students and personnel of the Homewood School System." (Plf. Ex. 11). In fact, at most, the City's subsequent explanation would constitute "an additional, but undisclosed, reason for the decision" which does not establish pretext. *See Tidwell v. Carter Prods.*, 135 F.3d 1422 (11th Cir. 1998).

   **c.**  **Biased Statements**

In a final effort to establish pretext, Officer Scott points to certain statements allegedly made by Chief Trucks, the final decision-maker, as evidence of gender animus. For instance, she maintains that Chief Trucks, on one occasion, told an Alabama-Auburn joke involving a woman's breasts and, on a second occasion, offhandedly stated "you will never see it kid" in response to a female police officer's comment that she could not wait to become a lieutenant so that she would "get to tell everybody what to do." (Plf. Ex. 1, Scott depo. at pp. 88-91). Similarly, a fellow female police officer, Kathy Henderson

14

("Officer Henderson"), testified that she overheard part of one conversation wherein Chief Trucks referred to women as "split tails" and overheard part of a second conversation wherein Chief Trucks made the statement that "women were good for a lot of things but police work was not one of them." (Def. Ex. D, Henderson Depo. at pp. 8-10).

The two comments overheard by Officer Scott, the Alabama-Auburn joke and "you will never see it kid," are properly classified as "stray remarks," made at some unknown point in time, in some unknown context, and unrelated to the employment decision at issue. As such, they are of little probative value in establishing a discriminatory animus on the part of the decision-maker. *Compare Damon v. Fleming Supermarkets Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (finding decision-maker's comment to plaintiff's replacement immediately after plaintiff was terminated that "what the company needed was aggressive young men . . . to be promoted" to be "highly suggestive" circumstantial evidence of discriminatory animus). As to the stray remarks allegedly overheard by Officer Henderson, while the substance of those comments undoubtedly provide circumstantial evidence of gender animus, their probative value is significantly diminished by the fact that Officer Henderson has no idea as to when, to whom, or in what context the statements were made. In fact, there is absolutely no evidence tending to suggest that the statements were related, in any way, to the filling of the SRO vacancy or to any other.

In sum, while Officer Scott has come forward with various bits of circumstantial evidence, none of her evidence, taken as a whole, is sufficient to undermine the City's objective, legitimate, non-discriminatory explanation for its employment decision. The defendants' motion for summary judgment will be granted as to plaintiff's Title VII claim.

### B. Section 1983 Claims

To obtain relief under 42 U.S.C. § 1983, a plaintiff must allege the deprivation of a right secured under the Constitution or federal law, and demonstrate that the alleged deprivation occurred under the "color of state law." 42 U.S.C. § 1983; *Motes v. Myers*, 810 F.2d 1055, 1058 (11th Cir. 1987). In the present case, Officer Scott alleges that the City and the individual defendants, acting in their individual capacities as officers/supervisors of the Homewood Police Department, violated her right to Equal Protection as guaranteed under the Fourteenth Amendment to the United States Constitution. Since both causes of action (Title VII and § 1983) seek relief for identical conduct, i.e., rejection of a requested transfer to the position of SRO, "the elements of the two causes of action are the same." *Cross v. Alabama Dep't of Mental Heath & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995) (quoting *Hardin v. Stynchcomb*, 691 F.2d 1364, 1316 n. 16 (11th Cir. 1982)); *see also LaFleur v. Wallace State Community College*, 955 F. Supp. 1406, 1417 (M.D. Ala. 1996). Accordingly, the court's determination that Officer Scott failed to produce sufficient circumstantial evidence to survive summary judgment on her Title VII claim is equally applicable to her § 1983 claims. Summary judgment will be granted in favor of the defendants.

### V. Conclusion

After conducting a thorough review of the evidence of record as well as the arguments set forth above, the court is convinced that Officer Scott has failed to present evidence that would justify a fact-finder in finding that the City's proffered explanation is unworthy of credence, or that the City was more likely motivated by a discriminatory reason

16

in not awarding Officer Scott the transfer to the position of SRO. The court will enter an appropriate order in conformity with this memorandum opinion granting the defendants' motion for summary judgment in all respects.

Done, this  3 1st  of May, 2001.

_____
Edwin L. Nelson
United States District Judge